RIDGEWAY, ASSIGNEE, APPELLEE, *v.* THE HOME FEDERAL
SAVINGS & LOAN ASSN., APPELLEE; THE NATIONAL
CITY BANK OF MARION, APPELLANT, ET AL.

(No. 1007—Decided January 14, 1949.)

Messrs. *Carhart & Carhart*, Messrs. *Donithen, Michel & Davis*, Messrs. *Bartram & Bartram* and Mr. *Carter M. Patton*, for appellees.

Messrs. *Guthery, Harmon & Conkle*, for appellant.

Guernsey, J.  This is an appeal on questions of law from a judgment of the Common Pleas Court of Marion County, in an action wherein the appellee, D. C. Ridgeway, as assignee for the benefit of creditors of Clifford Richards and Jessie Richards, husband and wife, was plaintiff, and the appellees, The Home Federal Savings & Loan Association, Paul D. Michel, and others, and the appellant, The National City Bank of Marion, were defendants.

The judgment appealed from was journalized on August 3, 1948, confirming the sale of real estate ordered sold in the action, and ordering distribution of the proceeds thereof.

No bill of exceptions has been filed herein and the appeal is submitted upon the pleadings and original papers filed in the Common Pleas Court, and the record in that court.

The brief of defendant, The National City Bank of Marion, appellant herein, assigns error in that the final order and judgment of the Common Pleas Court is contrary to law.

The following pertinent facts are apparent from the pleadings and original papers filed in the Common Pleas Court, the orders of the court, and the final entry:

Clifford Richards and Jessie Richards, his wife, owned a piece of real estate in Marion, Ohio.  The same was heavily encumbered by mortgages, judgment liens, tax liens, and mechanics liens.

On or about June 16, 1947, and subsequent to the attaching to the real estate of the mortgages and

other liens mentioned, Richards and his wife made a deed of assignment to D. C. Ridgeway as assignee for the benefit of their creditors. This assignment was duly filed and recorded in the record of assignments of the Probate Court and D. C. Ridgeway duly qualified as such assignee.

The appellant is a lienholder by way of mortgage, its lien being found and adjudicated by the Common Pleas Court as fourth in priority of the liens on the premises.

The real estate in question was appraised at $9,000, which amount is less than the aggregate amount of the claimed liens thereon, as shown by the pleadings and original papers in the case.

The real estate being encumbered by liens, the assignee, pursuant to the provisions of Section 11127, General Code, brought this action in the Common Pleas Court to determine the amount of the liens, and to sell the real estate.

When the case came on for hearing on the pleadings for the purpose of determining the liens, the court found liens totaling $9,614.94, an amount in excess of the appraisement. And in addition to the liens found by the court, there were a number of liens barred by reason of the lien claimants being in default, either for pleading or for appearance.

The real estate was ordered sold and was purchased by the defendant bank for the sum of $6,000. The amount bid was insufficient to pay the defendant bank and the lienholders who held liens prior to the bank's mortgage, and nothing was ordered paid to the bank on its lien.

Upon the order of confirmation, which is the final order in this case and the order appealed from, the court below allowed and ordered paid prior to the payment of liens, the following items:

1. To the treasurer of Marion county, Ohio, the taxes and penalties now due and owing on the real property, in the sum of $35.54.

2. To the clerk of the Common Pleas Court, the costs in the cause, in the sum of $639.75, including an assignee's fee to D. C. Ridgeway of $240 and an attorney fee to Carhart & Carhart of $270.

3. To George J. Oriens, for premium on assignee's bond, the sum of $100.

4. To F. C. Bender, plumbing, $2.44.

5. To J. J. Francis, auctioneer, $10.

6. To Judge Edward J. Ruzzo, Probate Court costs in the sum of $45.15.

The court then, following the order of priority mentioned, ordered payments to lienholders out of proceeds of sale, in the following order of priority:

7. To The Home Federal Savings & Loan Association, the sum of $4,774.17.

8. To the Avenue Lumber & Supply Company, the sum of $99.53.

9. To revenue stamps, $6.60.

10. To Joe Bain, to apply on his lien, the sum of $285.82.

The journal entry determining liens discloses that on March 10, 1948, Joe Bain recovered a judgment against Clifford Richards and Jessie Richards, husband and wife, in the sum of $385.11, so that after crediting the amount ordered paid him in the judgment of confirmation and distribution there remained due him on his lien, a sum in excess of $98.29, which amount he would be entitled to receive prior to any payment made to the defendant bank on account of its lien on the premises.

In its entry determining liens, the court finds that the bond in the sum of $10,000 heretofore filed by D. C. Ridgeway as assignee for the benefit of all the

creditors of Clifford Richards and Jessie Richards, husband and wife, upon his appointment, is sufficient and is, therefore, approved and confirmed and no further bond is required for the sale of the real estate as described in plaintiff's petition.

In his petition, the assignee prays that the rights, interests and liens of the defendants to the action may be fully determined, adjusted and protected, and that he "may be authorized to sell said real estate to pay the debts and costs aforesaid, according to the statute in such case made and provided, and for all proper orders and relief in the premises."

In its answer and cross-petition, the defendant bank, among other things, prays "that said premises be sold agreeably to the prayer of plaintiff's petition."

In its brief, the defendant bank states that "It is to the allowance of a commission to the assignee, and fees to counsel for the assignee, and the costs of Probate Court and the general expenses of the assignment, to which the appellant objects."

Defendant bank states further that the questions raised are:

I. Can an assignee be allowed his commission and counsel fees from a sale of real estate where a lienholder, not the first lienholder, bid in the property for a sum insufficient to pay the lienholder and those who hold liens prior to the purchaser's?

II. Can the Common Pleas Court, in such a case, allow the assignee's commission, counsel fees, and general costs of the assignment out of the proceeds of the sale prior to the distribution among lienholders?

Those questions involve the same subject matter and will be considered together.

Sections 11115, 11116, 11117, 11118, 11119, 11120, 11121, 11122, 11126, 11127, 11128, 11129, 11130, 11131, 11132, 11134, 11135, 11139, 11140, 11141,

11142, 11143 and 11144, General Code, are pertinent to the questions raised.

The sections mentioned were originally incorporated in sections of the Revised Statutes, as follows: Section 11115, in Section 6350, R. S.; Section 11116, in Section 6350a, R. S.; Section 11117, in Section 6350b, R. S.; Section 11118, in Section 6350c, R. S.; Sections 11119 and 11120, in Section 6350d, R. S.; Sections 11121 and 11122, in Section 6350e, R. S.; Sections 11126, 11127, 11128, 11129, 11130, 11131 and 11132, in Section 6351, R. S.; Sections 11134 and 11135, in Section 6352, R. S.; Section 11139, in Section 6355, R. S.; Sections 11140, 11141, 11142, in Section 6356, R. S.; and Sections 11143 and 11144, in Section 6357, R. S.

We will first consider the validity of the allowance of commission to the assignee.

While there are a number of cases bearing more or less upon the allowance of commission to an assignee for the benefit of creditors upon a sale, in an action brought by him for that purpose, of unencumbered real estate assigned to him by his assignor, there is a case decided by the Supreme Court of Ohio, directly in point, determining the validity of such allowance under the statutory provisions above referred to which were then incorporated in the above-named sections of the Revised Statutes of Ohio. The decision in that case has never been overruled, modified or questioned, and is the established law of Ohio upon the subject, so it will not be necessary to discuss any other cases bearing on the question. The case we refer to is *Andrews, Assignee,* v. *Johns,* 59 Ohio St., 65, 51 N. E., 880.

As appears from the report of the case in the Supreme Court, the case was tried in the Probate Court in which the action to sell the real estate of his assignor was instituted by the assignee, and appealed to the Common Pleas Court. The Common Pleas Court, up-

on the trial of the appeal, stated its conclusions of fact and law separately. Among the pertinent facts found by it were the following:

The real estate was bid off and purchased at the sale made by the assignee, by one Albert Hughes, who held the first mortgage lien on the real estate, and the same was sold for the sum of $5,900, which was not sufficient to pay the taxes, costs and the mortgage lien of Hughes. The assignee performed services in the sale of the real estate, of the value of $250. In the discharge of the trust, the assignee employed attorneys who rendered services in the action to sell the real estate, of the value of $148, which amount was paid by the assignee to the attorneys, and there were no funds of the assignee with which to pay for the legal services' except the proceeds of the sale of the real estate.

And the Common Pleas Court, from the facts, found as conclusions of law, that the assignee should be allowed the sum of $148 paid by him to his attorneys and should also be allowed the sum of $33.70 on so much of the proceeds of the real estate collected by the assignee, for the payment of costs and taxes, but that the assignee was not entitled to be allowed any commission on the balance of the proceeds of the sale as the same were retained by Hughes on his mortgage lien; and that the assignee was not entitled to recover anything by way of extraordinary services so rendered by the assignee, for the sole reason that there was no fund out of which to pay the same except the proceeds of the sale, which Hughes, as the purchaser of the real estate, was entitled to retain on his mortgage lien.

On error to the Circuit Court, prosecuted by the assignee, the judgment of the Common Pleas Court was affirmed. The assignee then prosecuted error from the Circuit Court to the Supreme Court.

The Supreme Court affirmed the judgment of the

Circuit Court in the case, holding, in the syllabus of the case:

"1. The term 'proceeds of the real estate sold,' found in Section 6357, Revised Statutes, implies money arising from the sale actually received and accounted for as such by the assignee. Upon money so received he is entitled to the percentage compensation named in the section above cited.

"2. But, where the land offered for sale by the assignee is bid in by a mortgage creditor whose mortgage is the first lien, and the bid is less than the amount of the debt so secured, taxes and costs, the mortgagee is not required to pay over to the assignee, nor into court, the amount of such bid, and in such case the assignee is not entitled to the percentage compensation provided in said section."

In the opinion in the case, the statutory provisions above referred to are considered and construed. The construction of Section 6357, Revised Statutes, the provisions of which are now incorporated in Sections 11143 and 11144, General Code, is as set forth in paragraph one of the syllabus in the case.

The decision in the case is based on this construction and the following reasoning appearing in the opinion in the case:

"Now where the land exposed for sale by an assignee, which is incumbered by a mortgage constituting a first lien has been bid in by the mortgagee for a sum less than the amount owing on his mortgage, there can be no 'proceeds' in the sense of money for distribution, for the legal effect of the bid and sale, followed by confirmation and deed, is only to satisfy the mortgage, and the debt *pro tanto*, and vest in the mortgagee, purchaser, the equity of redemption of the assignor, and is not to produce a fund for distribution. It has never been the law or practice in this state to

require a mortgagee, purchasing under such circumstances, to pay the amount of his purchase either to the officer making the sale, nor into court. The reason is that having already the legal title subject to the equity of redemption of the mortgagor, the purchaser is in a sense the owner, and requires only a satisfaction in a legal manner of the equity of redemption, and of any subsequent liens, followed by possession, in order to give him a complete title to the land. To require the mortgagee to pay over to the assignee in money the amount of his bid, to be followed by a repayment to him by the assignee of all or the major part of the sum would not only be the requiring of a vain thing, a ceremony illogical and useless, but it would in many cases work downright injustice. * * *

"If no 'proceeds,' within the fair construction of the statute, arise from the sale, then it would seem to follow, necessarily, that there can be no percentage commission."

Applying the converse of the above reasoning to the facts in the case at bar, it is obvious that where, as in the case at bar, the lienholder purchaser is under the duty as a matter of law of paying into the court in which the real estate was sold all or any part of the purchase price of the real estate to satisfy prior liens, the assignee is entitled to the rate of commission specified in Section 11143, General Code (Section 6357, Revised Statutes), on the proceeds of the sale coming into his hands as the result of the suit instituted by him for distribution among the lienholders having priority over the lien of the purchaser.

We therefore hold that the court did not err in the allowance made to the assignee by way of commission on the proceeds of sale coming into his hands.

We will next consider the validity of the allowance to the attorneys for the assignee for the services per-

formed by them in the proceeding to sell the real estate.

It will be noted that in the case of *Andrews, Assignee,* v. *Johns, supra,* an allowance to the attorneys of the assignee, for services performed by them in the proceedings to sell the real estate, was made by the Common Pleas Court, on the appeal from Probate Court, and no appeal was taken by the purchaser lienholder from such allowance, so that such allowance was not a matter of consideration in the Supreme Court.

The matter of the allowance of attorney fees of the assignee for the benefit of creditors, in an action brought by the assignee to sell real estate of his assignor, where there were two tracts of real estate covered by separate mortgage liens and one tract was sold to the mortgagee of the tract for an amount not sufficient to pay the mortgage claim of the purchaser thereof in full, and the other tract was sold to the mortgagee of the tract for an amount not sufficient to pay the mortgage claim, was before the court in the case of *Shaw, Trustee,* v. *Fifth Ward Bldg. Assn.,* 6 C. C., 41, 3 C. D., 340. The court held, in paragraph three of the syllabus, as follows:

"But it appearing that the proceeding was commenced by the assignee in good faith, and that it was apparently necessary to the proper discharge of his duty, and that the same in some degree operated to the benefit of lienholders, who otherwise would have been compelled to file several petitions for the foreclosure of their mortgages, resulting in greater costs, which would have to be paid from the proceeds of such sales, in such case, under the provisions of Section 6357, Revised Statutes, such assignee may be allowed for the fees of his counsel such sum as under all the circumstances of the case may seem to the court just and reasonable."

In that case the appraisement shows that the properties were worth considerably more than the amount of the mortgages upon them and that something probably would be realized from the sale, for other creditors, after paying the mortgage claim thereon and the costs and expenses, and it would seem, therefore, that the assignee was justified in filing the petition.

In the opinion in the case, the judge writing the opinion comments on this fact and then states:

"And if this be so, it would also seem, that under the terms of the statute, the court having the right to order the distribution of the fund, can properly not only decree the payment therefrom of the usual and ordinary court costs in the case, but in addition such just, reasonable, and actual and necessary expenses of the assignee, and reasonable and necessary counsel fees incurred with reference to such fund, and the proceeds of the real estate so sold, thus brought before the court for distribution. If, however, the services of such assignee, or of his counsel, are not in any sense for the benefit of the fund thus realized, or of those having liens upon it, it is the law as we understand (and it is a reasonable doctrine), that such services should not be paid for from the fund in a case like this, for then it would be compelling the lienholder to pay from his own pocket, for that which could not benefit him."

While in the case at bar the appraisement did not show that the real estate was worth more than the amount of the mortgage upon it, the assignee apparently proceeded to sell the real estate, believing something would probably be realized from the sale, for other creditors, after paying the mortgage claim thereon, and the costs and expenses, and as the defendant bank, in its answer and cross-petition asks that the real estate be sold as prayed for in the assignee's petition, it is estopped to deny that the as-

signee did not proceed in good faith to sell the real estate, so the decision in the case is applicable to the facts in this case, and supports the plaintiff's contention that the court in the instant case did not err in making the allowance for attorney fees.

Following the reasoning of the last-mentioned decision, we hold that the court did not err in the allowance of attorney fees to the assignee's attorneys.

We will next consider the validity of the allowance for premium on assignee's bond.

In an action for the sale of real estate by an assignee for the benefit of creditors, it is necessary that bond be given. In the instant case the court made an order approving the bond originally given by the assignee in the Probate Court to qualify him as such assignee, as the bond required in the action to sell real estate. Unless this had been done, the assignee would have been required to give a separate bond in the action in the Common Pleas Court, the premium on which would have been the same as the premium on the bond given by the assignee in the Probate Court. The lienholders, therefore, had the benefit of the bond as given and the premium therefor constituted a necessary expense of the action to sell real estate, so the court did not err in making this allowance.

There is nothing in the record for review which shows the exact purpose for which the item for plumbing was allowed. In the absence of such evidence it must be presumed that the plumbing was performed on the real estate which was sold in the action and was necessary for its preservation, and was, therefore, properly allowed.

There is also nothing in the record for review showing exactly what services were performed by the auctioneer for which a ten-dollar allowance was made to him, and in this situation it must be presumed that the

services of the auctioneer were in connection with the sale of the premises, and necessary in such proceeding, and, therefore, properly allowed.

The amount allowed to Judge Edward J. Ruzzo for Probate Court costs in the sum of $45.15 is less than the amount it would require to pay the balance owing on the lien of Joe Bain, so that if this allowance was made without authority of law and was for that reason cancelled, the amount thereof would be applied toward the payment of the Bain lien and the defendant bank would receive no part thereof to apply on the amount owing on its lien. Consequently, although this amount may have been improperly allowed, its allowance did not adversely affect any right or interest of the defendant bank, so the bank is not in a position to contest the allowance.

For the reasons mentioned, the judgment of the Common Pleas Court will be affirmed, at the costs of defendant bank.

*Judgment affirmed.*

JACKSON, P. J., and MIDDLETON, J., concur.